UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ADAM P. BECK, M.D.; ADAM P. BECK, M.D., P.C.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTHCARE OF NEW ENGLAND, INC.; UNITED HEALTHCARE SERVICES, INC.,<br><br>Defendants. | * * * * * * * * * * * * * * * | Civil Action No. 26-cv-10692-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Adam P. Beck ("Dr. Beck") and Adam P. Beck, M.D., P.C. (together, "Plaintiffs") filed this action in Massachusetts Superior Court in November 2025, asserting various statutory and common law claims against UnitedHealthcare of New England, Inc. and UnitedHealthcare Services, Inc. (together "United" or "Defendants"). [ECF No. 1-1 ("Complaint" or "Compl.")]. Defendants subsequently removed the case to federal court, pursuant to this Court's diversity jurisdiction. [ECF No. 1]. Presently before the Court are Plaintiffs' motions (1) for leave to file an amended complaint to add and assert claims against two additional Massachusetts-based defendants, [ECF No. 9], and (2) for joinder and remand pursuant to 28 U.S.C. § 1447(e), [ECF No. 11]. For the following reasons, both motions are **DENIED**.

# I. BACKGROUND

## A. Factual Background

### 1. The Parties

Plaintiffs are residents and citizens of Massachusetts. [Compl. ¶¶ 1–2]. Dr. Beck is an ophthalmologist and the owner of Adam. P. Beck, M.D., P.C., located in Andover, Massachusetts. [Id. ¶¶ 1–2].

UnitedHealthcare of New England, Inc. is a corporation, with its principal office in Warwick, Rhode Island, that contracts with Massachusetts providers and administers healthcare plans covering Massachusetts residents. [Id. ¶ 3]. UnitedHealthcare Services, Inc. is a corporation, with its principal place of business in Minnetonka, Minnesota, that administers and manages UnitedHealthcare insurance products across the country. [Id. ¶ 4].

The Lowell General Hospital ("Lowell General"), which Plaintiffs seek to join as a defendant, is a Massachusetts entity with a principal office in Lowell, Massachusetts. [ECF No. 9-1 ¶ 17]. The Lowell General Physician Hospital Organization ("Lowell General PHO") is a division of Lowell General that negotiates contracts with practitioners and facilitates contracting between payors, such as insurers, and physician networks. [Id. ¶ 18]. Plaintiffs also seek to add the Tufts Medicine Integrated Network, Inc. ("TMIN"), a Massachusetts non-profit corporation and physician network, as a defendant. [Id. ¶¶ 19, 248].

### 2. Allegations in Plaintiffs' Original Complaint

In their original Complaint, Plaintiffs allege that from January 1, 2019, to November 14, 2025, they provided ophthalmologic services to patients who were insured by or receiving health benefits administered by United, and that Plaintiffs submitted thousands of claims for these services to United. [Compl. ¶¶ 8–9]. United's payor report allegedly shows that Plaintiffs billed

$1,018,445.95 for 4,931 claims during that period. [Id. ¶ 10]. Plaintiffs assert that United improperly reduced, denied, downcoded, and suppressed allowable amounts under some of those claims and has paid only $337,854.36 to Plaintiffs. [Id. ¶¶ 11–13]. They have appealed many of the adverse determinations, but United has not corrected the alleged errors. [Id. ¶ 14].

Plaintiffs also allege that they participate in commercial payor networks through the Lowell General PHO, which is part of the TMIN. [Compl. ¶ 15]. They assert that they never received a provider contract, fee schedule, or documentation of the reimbursement methodology from United, despite repeatedly requesting copies of such.[1] [Id. ¶¶ 16–17]. Plaintiffs also claim that they did not sign any direct agreement with United or assent to arbitration, hidden edits, or contractual adjustments with United, [id. ¶ 18], and that United used Lowell General PHO to conceal the relevant contract documents from Plaintiffs, [id. ¶ 55]. In support of that allegation, Plaintiffs contend that on November 14, 2025, an employee of Lowell General PHO emailed Dr. Beck stating, "[l]egally we cannot share copies of our contracts." [Id. ¶ 20].

In their original Complaint, Plaintiffs brought ten claims against United for breach of contract, breach of the implied covenant of good faith, unjust enrichment, quantum meruit, restitution, "account stated," declaratory judgment, and violations of Massachusetts General Laws chapters 176O, 93A, and 176D. [Compl. ¶¶ 27–59].

### 3. Allegations in Plaintiffs' Proposed Amended Complaint

As United points out, Plaintiffs' proposed amended complaint, [ECF No. 9-1 ("Proposed Amended Complaint")], is four times as long as Plaintiffs' original Complaint, [Compl.]. The Proposed Amended Complaint is also replete with disorganized and repetitive factual allegations,

[1] The Court notes that the original Complaint is unclear as to whether Plaintiffs requested these documents from United, Lowell General PHO, or TMIN.

as well as conclusory legal assertions. See generally [ECF No. 9-1]. That said, the Court will attempt to summarize Plaintiffs' main allegations.

In their Proposed Amended Complaint, Plaintiffs allege that they participate in commercial payor networks through Lowell General PHO and TMIN, [ECF No. 9-1 ¶ 118], which control Plaintiffs' network participation, payor contracting status, and claim reimbursement, [id. ¶ 21], from payors including United, [id. ¶ 49]. Plaintiffs claim that Lowell General PHO and TMIN acted as their sole agents and attorneys-in-fact for network participation and reimbursements, and that Plaintiffs were dependent on Lowell General PHO and TMIN for reimbursement and dispute-resolution information. [Id. ¶¶ 77–78]. They further allege that United has not properly reimbursed them for certain claims that are governed by contracts that United has entered into with TMIN and Lowell General, [id. ¶¶ 28, 62, 92], and that Plaintiffs are subject to those contracts with United and to their reimbursement terms because of the agreements they executed with Lowell General and TMIN, [id. ¶¶ 28, 49, 62]. They claim that United, TMIN, and Lowell General have all asserted that Plaintiffs were required to use mandatory grievance and dispute resolution processes, [id. ¶ 98], including exhausting their administrative remedies before the Massachusetts Division of Insurance, [id. ¶ 108], before filing suit. Plaintiffs also include other tangential allegations, including that TMIN provided them with conflicting information regarding their participation in "WellSense Care Alliance,"[2] [id. ¶ 87], and that TMIN leadership attempted to "impair" Plaintiffs' board certification and "credentialing," [id. ¶ 90].

[2] Plaintiffs do not explain what WellSense Care Alliance is or how it relates to their other claims.

Additionally, at the end of their Proposed Amended Complaint, Plaintiffs include an almost verbatim recitation of their original allegations against United regarding the underpayment of specific claims for medical services they provided. Compare [Compl. ¶¶ 8–26], with [ECF No. 9-1 ¶¶ 111–129].

In the Proposed Amended Complaint, Plaintiffs assert seven claims against Lowell General or TMIN only, including claims for breach of contract, tortious interference, breach of duty of care, violation of Massachusetts General Law chapter 93A, and unjust enrichment. [ECF No. 9-1 ¶¶ 136–154, 228–232, 238–254, 262–284]. They assert fourteen claims against both United and one or both of the Massachusetts-based entities, including claims for breach of contract, breach of the implied covenant of good faith, declaratory judgment, equitable accounting, unjust enrichment, restitution, promissory estoppel, civil conspiracy, aiding and abetting, fraudulent and negligent misrepresentation, "money had and received," and chapter 93A violations.[3] [Id. ¶¶ 155–181, 187–227, 255–261, 285–307]. They also allege claims for quantum meruit and tortious interference against only United. [Id. ¶¶ 182–186, 233–237].

### B. Procedural History

Plaintiffs filed their original Complaint in Massachusetts Superior Court on November 17, 2025. [Compl.]. Defendants then removed the case to this Court on February 9, 2026. [ECF No. 1]. Plaintiffs filed the motions for leave to amend their complaint, [ECF No. 9], and for joinder and remand, [ECF No. 11], on February 18, 2026. Defendants opposed both of Plaintiffs' motions on April 10, 2026. [ECF No. 22].

---

[3] Plaintiffs describe Count III, [ECF No. 9-1 ¶¶ 155–181], as follows: "All Plaintiffs v. United; in the alternative, TMIN as contracting PO." Whether this allegation is considered to be against one or both entities does not change the Court's analysis.

## II. LEGAL STANDARD

Plaintiffs have moved for leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2), which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); see [ECF No. 9 at 1]. They have also, however, moved to join additional non-diverse defendants who would destroy diversity jurisdiction and for remand pursuant to 28 U.S.C. § 1447(e).[4] [ECF No. 13 at 1]. Defendants contend that the Court should apply § 1447(e) rather than Rule 15(a)(2) because § 1447(e) supersedes Rule 15 in circumstances like these, where a plaintiff seeks to amend his complaint to add non-diverse defendants which would destroy diversity jurisdiction. [ECF No. 22 at 10–11].

Other sessions of this court have routinely found that 28 U.S.C.§ 1447(e) applies in situations where a party seeks to add non-diverse parties by amending his complaint pursuant to Rule 15(a). See N.E. Bridge Contractors, Inc. v. Aspen Aerials, Inc., 363 F. Supp. 3d 217, 218 (D. Mass. 2019) (citing Kauders v. Uber Techs., Inc., No. 16-cv-11659, 2017 WL 1652551, at *2 (D. Mass. May 1, 2017)) ("[M]ost courts have concluded that plaintiffs cannot destroy diversity through amendment as a matter of right and have, instead, analyzed whether joinder of the non-diverse defendant is appropriate under 28 U.S.C. § 1447(e) . . . ."); Kauders, 2017 WL 1652551, at *3 ("[C]ourts have concluded that when a plaintiff adds a non-diverse defendant following removal, § 1447(e) applies even if the amendment would otherwise be permissible as a matter of course under Rule 15(a)(1)."); Theberge v. ACV Env't Servs., Inc., 573 F. Supp. 3d 447, 450–51

[4] Plaintiffs do not directly contend that the Court should rely on Rule 15(a)(2) rather than § 1447(e), and their analysis under the latter in their motion for joinder and remand suggests they understand that § 1447(e) applies here. See [ECF No. 13].

(D. Mass. 2021) (applying the standard in § 1447(e) when plaintiff sought leave to amend complaint to add non-diverse defendants); Kelley v. Vermont Mut. Ins. Co., 407 F. Supp. 2d 301, 305–06 (D. Mass. 2005) (same). Accordingly, the Court finds that § 1447(e) controls the current inquiry.

28 U.S.C. § 1447(e) states that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." "In determining whether to permit joinder, courts can consider all relevant factors, including '[1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether the plaintiff has been dilatory in asking for amendment, [3] whether the plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities.'" Theberge, 573 F. Supp. 3d at 450 (quoting N.E. Bridge Contractors, Inc., 363 F. Supp. 3d at 219) (citation modified). "The permissive language of § 1447(e) makes clear that Congress granted the courts broad discretionary power to permit or deny joinder, even though the decision could divest the court of its jurisdiction and force a remand to state court." Kelley, 407 F. Supp. at 305.

"[S]uch joinder is to be determined by the 'sound discretion' of the district court," and although § 1447(e) "does not require a strict Fed. R. Civ. P. 19(b) analysis for dispensability," N.E. Bridge Contractors, Inc., 363 F. Supp. 3d at 219 (quoting Mayes v. Rapoport, 198 F.3d 457, 462 (4th Cir. 1999)); see also Kelley, 407 F. Supp. 2d at 305 ("A court's decision under § 1447(e) does not depend on whether the nondiverse defendant is classified as an indispensable or dispensable party as defined by the Fed. R. Civ. P. 19."); Irizarry v. Marine Powers Int'l, 153 F.R.D. 12, 14 (D.P.R. 1994) ("Virtually every court confronted with this issue has unanimously agreed that the statute compels a court to focus on whether joinder would be 'equitable' instead

of being based on whether a party is indispensable"), the First Circuit has noted that it is not "unimportant whether a nondiverse defendant whom a plaintiff seeks to join or substitute after removal is dispensable or indispensable to the action," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 675 (1st Cir. 1994). "If the defendant is indispensable, the district court's choices are limited to denying joinder and dismissing the action pursuant to Fed. R. Civ. P. 19, or else allowing joinder and remanding the case to the state court pursuant to § 1447(e)." Id.

Accordingly, the Court will first consider whether Lowell General and TMIN are indispensable parties under Rule 19(b), and then will conduct an analysis of the four § 1447(e) factors.

## III. DISCUSSION

### A. Dispensability

Federal Rule of Civil Procedure 19(b) governs whether a party is indispensable and requires courts to consider "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Kauders, 2017 WL 1652551, at *4 (quoting Fed. R. Civ. P. 19(b)). "The factors to be considered include: '(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided . . . ; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.'" Id. (quoting Fed. R. Civ. P. 19(b)).

Plaintiffs make relatively little argument as to why Lowell General and TMIN are indispensable in their action against United aside from a conclusory statement that "complete

relief cannot be afforded in the absence of the proposed defendants" because their "roles as contracting entities and administrators are central to the payment governance and reimbursement conduct challenged in this action." [ECF No. 13 at 7, 25]. United contends that Plaintiffs' claims against it arise from different transactions, duties, and contracts than Plaintiffs' new claims against Lowell General and TMIN, [ECF No. 22 at 24–25], arguing that Plaintiffs' claims against it revolve around reimbursement for a discrete set of claims, including alleged downcoding, improper denials, violations of statutory requirements for claims handling, and improper reimbursement methodologies. [Id. (citing [ECF No. 9-1])]. United further avers that these claims are not substantially related to the claims against Lowell General and TMIN, which revolve around failure to deliver copies of agreements, restrictions on contract review, breaches of participation agreements, interference with credentialing and professional standing, and participation fees. [Id. at 25–26].

The Court finds United's argument persuasive. There are two relatively distinct sets of facts at issue in Plaintiffs' Proposed Amended Complaint: (1) United's reimbursements or lack thereof for certain specific claims submitted by Plaintiffs for medical care they provided to patients, and (2) the participation agreements that Plaintiffs entered into with TMIN and Lowell General and other alleged conduct by TMIN and Lowell General. The separation between the two different situations is particularly evident in the fact that Plaintiffs simply appended their original factual allegations against United to the end of their Proposed Amended Complaint, with no integration that would suggest the claims were related. Compare [Compl. ¶¶ 8–26] with [ECF No. 9-1 ¶¶ 111–129]. While Plaintiffs attempt to blend the allegations together by asserting a plethora of causes of action against various combinations of the original and proposed defendants, the lack of specificity and detail in the claims section of their Proposed Amended

Complaint undermines their efforts. See generally [ECF No. 9-1]. As United has emphasized, Plaintiffs have largely failed to explain how each defendant is connected to each claim, including what aspect of their individual conduct gives rise to the basis for each claim. [ECF No. 22 at 20].

With respect to the first two Rule 19(b) factors, Plaintiffs have provided the Court with no reason to believe that a judgment rendered on their claims against United in the absence of Lowell General or TMIN would prejudice any party. Plaintiffs can, if they so choose, bring a separate action against the two Massachusetts-based entities, and the Court does not see any reason why Lowell General or TMIN would be prejudiced if they were not joined in this suit. Regarding the third factor, while the agreements between United, Lowell General and TMIN may be relevant to Plaintiffs' reimbursement-related claims against United, Plaintiffs have not provided any explanation as to why Lowell General and TMIN need to be included in this action for Plaintiffs to obtain adequate relief from United. To the extent that Plaintiffs need copies of the agreements between United and the two Massachusetts-based entities to pursue their claims against United, Plaintiffs can likely obtain those materials during discovery. Finally, the fourth factor is not applicable here because the Court will not dismiss the action for nonjoinder. For these reasons, the Court finds that Lowell General and TMIN are dispensable, rather than indispensable, parties to this action and, therefore, the Court can, depending on the § 1447(e) factors, deny joinder and exercise jurisdiction over the action just between Plaintiffs and United, without its options being limited to dismissal or remand.

**B. The § 1447(e) Factors**

1. Improper Motive

The first § 1447(e) factor concerns whether Plaintiffs' purpose in attempting to join Lowell General and TMIN is to defeat federal jurisdiction. Theberge, 573 F. Supp. 3d at 450. "In evaluating whether [the plaintiff's] motivation in moving to amend is primarily to defeat federal jurisdiction, the Court may consider the extent to which such a motivation is evinced through the circumstances of the case." Kelley, 407 F. Supp. 2d at 306. "Courts have warned that motions to join non-diverse defendants, when filed promptly after removal and with little intervening discovery, may represent 'tactical maneuvers' rather than substantive amendments based on newly discovered facts," Mullane v. Portfolio Media, Inc., No. 19-cv-11496, 2019 WL 12316202, at *9 (D. Mass. Nov. 19, 2019) (quoting Gum v. Gen. Elec. Co., 5 F. Supp. 2d 412, 414–15 (S.D. W. Va. 1998)) (report and recommendations adopted January 2, 2019 (Dkt. No. 74)), and they "place particular emphasis on th[is] first factor," Connelly v. Gen. Motors Corp., No. 86-cv-08077, 1986 WL 14140, at *2 (N.D. Ill. Dec. 8, 1986).

Plaintiffs filed their original Complaint in Massachusetts Superior Court on November 17, 2025, which not only referenced Lowell General and TMIN but also explained Plaintiffs' relationship to the two entities, which they described as "contracting intermediaries." [Compl. ¶¶ 15, 20]. And, as Plaintiffs allege in their Proposed Amended Complaint, they had been requesting copies of certain agreements from Lowell General and TMIN since 2022, and the denial of those requests forms the basis for much of Plaintiffs' claims against the new Massachusetts-based defendants. [ECF No. 9-1 ¶¶ 79, 100]. Yet, despite these issues, which allegedly span back to 2022, see [id.], Plaintiffs chose not to include Lowell General or TMIN in their original Complaint or to join them while the Complaint was pending in state court prior to

removal. Then, only one week after United removed the action to this Court, Plaintiffs sought to add the two additional entities. [ECF No. 9].

For their part, Plaintiffs offer no convincing explanation as to why they sought to add Lowell General and TMIN only after the case was removed to federal court. Instead, they merely declare that Lowell General and TMIN were not added to defeat diversity jurisdiction, and reiterate that they are "contracting and administrative entities" whose conduct is part of the "core factual basis" for their claims. [ECF No. 13 at 5]. The Court is not convinced that this is the case. The timeline of Plaintiffs' actions, namely moving to join the Massachusetts-based entities and remand immediately after removal, raises serious questions regarding their motive. Further, as United points out, see [ECF No. 22 at 14], this is not the first instance in which these same Plaintiffs have attempted to join non-diverse defendants to interfere with this Court's exercise of jurisdiction. See Beck v. Bronstein, No. 23-cv-10416, 2023 WL 5833116, at *7 (D. Mass. Sep. 8, 2023) (finding that plaintiffs had fraudulently joined an out-of-state defendant to destroy diversity jurisdiction). As such, the Court finds that this factor weighs in favor of United.

2. Timeliness

With respect to whether Plaintiffs have been dilatory in moving to amend, "courts have held that '[t]he only delay that is relevant to joinder considerations . . . is that between the removal of the case and the plaintiff's motion for joinder and remand,' not the period between any previous complaints and the attempt at joinder." Mullane, 2019 WL 12316202, at *10 (quoting Kelley, 407 F. Supp. 2d at 308). Plaintiffs did not delay in seeking amendment after the removal, and this factor therefore weighs in their favor. Their timeliness, however, is "something of a double-edged sword" because, as noted above, it invites the inference that they

amended specifically in response to the action being removed. Accordingly, the Court finds that this factor weighs in Plaintiffs' favor, but not so heavily that it negates the strong weight of the first factor against them.

3. Whether Plaintiffs will be Significantly Injured If the Amendment is Not Allowed

In connection with the third factor, courts consider "whether a plaintiff can be afforded complete relief in the absence of the amendment," Mullane, 2019 WL 12316202, at *10 (quoting Jerido v. Am. Gen. Life & Acc. Ins. Co., 127 F. Supp. 2d 1322, 1325 (M.D. Ala. 2001)), and "the extent of the possible danger posed by concurrent litigation in federal and state court to the plaintiff if the amendment is not allowed," id. (quoting Kelley, 407 F. Supp. 2d at 308).

Plaintiffs argue that if they are denied leave to amend, they will be forced to pursue duplicative litigation in state court concerning the same contractual relationships and factual events at issue. [ECF No. 13 at 6]. They contend that this would result in "overlapping discovery, inconsistent factual determinations, increased litigation expense, and the risk of conflicting rulings on closely intertwined state-law contract and agency issues . . . and that complete relief cannot be afforded in the absence of the proposed defendants." [Id. at 6–7]. Plaintiffs do not, however, provide any further explanation as to why or how those issues would come about in this specific case aside from their general statement that Lowell General and TMIN are "central to the payment governance and reimbursement conduct." [Id. at 7].[5]

On the other hand, United asserts that Plaintiffs' proposed claims against Lowell General and TMIN are "severable and self-contained." [ECF No. 22 at 21]. Specifically, United

---

[5] The Court notes again that, to the extent that documents or testimony concerning Lowell General and TMIN are necessary for Plaintiffs to prove their case in this action, other means are available to obtain such evidence.

contends that in the Proposed Amended Complaint, seven of the claims are asserted only against Lowell General or TMIN, not United, and that Plaintiffs do not explain why the fourteen claims brought against both United and at least one of the Massachusetts-based entities involve those specific defendants or which defendants engaged in which improper conduct relevant to each claim. [Id. at 20]. United also argues that parallel litigation, while potentially inconvenient, does not amount to substantial prejudice, especially where, as here, the case is in its very early stages. [Id. at 21].

Plaintiffs' argument in support of their position is largely lacking. For the most part, they parrot general factors that courts may consider when deciding whether a party will be harmed if joinder is not allowed, but do no work to connect those factors to the instant case. See [ECF No. 13 at 6–7]. Without more, the Court declines to find that Plaintiffs have demonstrated that they will suffer significant harm should joinder be denied and, therefore, factor three weighs in United's favor.

4. Other Equitable Considerations

In addition to the first three factors, courts may "consider 'any other factors bearing on the equities' of the decision on joinder." Mullane, 2019 WL 12316202, at *11 (quoting Kelley, 407 F. Supp. 2d at 306). Here, Plaintiffs do not offer any additional arguments regarding the equities beyond what they mentioned in connection with the third factor. See [ECF No. 13 at 7–8]. United contends that it has a substantial and protected interest in maintaining a federal forum, and that Plaintiffs are intending to defeat that interest through tactical maneuvering, [ECF No. 22 at 22–24], but like Plaintiffs, it points to no "concrete prejudicial effect" it may suffer if forced to litigate in state court, see Kelley, 407 F. Supp. 2d at 309–10 ("While [the defendant] has an interest in defending this action in federal court, for the purpose of determining whether a

remand would be equitable, there appears to be no tangible prejudice to the defendant that would result from remand alone.”). As such, the Court finds that the fourth factor does not weigh in either party’s favor.

Upon careful consideration, the Court finds that overall the § 1447(e) factors weigh in favor of denying Plaintiffs’ motion to amend their complaint and their motion for remand.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs’ motion for leave to file an amended complaint, [ECF No. 9], and motion for joinder and remand, [ECF No. 13], are **DENIED**. United is hereby ordered to file their responsive pleading by **October 6, 2026**.

**SO ORDERED.**

September 21, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE